# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 97-0157-WS-C |
| | ) | |
| MICHAEL PAUL WOODS, | ) | |
| | ) | |
|     Defendant. | ) | |

## ORDER

This long-closed criminal matter comes before the Court on defendant Michael Woods' "Request for Hearing" (doc. 251) concerning the process of garnishment initiated by the United States against his employer, Robert J. Baggett, Inc.

Back in March 1998, Woods was convicted and sentenced in this District Court for one count of damaging or destroying religious property by means of fire, in violation of 18 U.S.C. § 247(c), and one count of arson, in violation of 18 U.S.C. § 844(i). At sentencing, the late Judge Vollmer ordered, among other things, that Woods was to make restitution to St. Joe's Baptist Church in Little River, Alabama, in the amount of $96,836. Woods' restitution obligation was joint and several with that of his co-defendants Alan Odom, Brandy Boone, Jeremy Boone, and John Kenneth Cumbie. The restitution was due immediately and payable in full. As of September 2010, however, more than 12 and a half years after Woods and his co-defendants were sentenced (and long after most of them had served their prison sentences in connection with this matter), the defendants' joint and several restitution balance remained at a robust $74,474.96.[1]

---

[1] In other words, over a 12.5 year period, the five defendants combined to pay a grand total of $22,361.04 in restitution to the victim of their crimes. That figure averages out to less than $30 per defendant per month, a paltry sum by any reckoning. At this rate, Woods and his co-defendants will not come close to completing their restitution obligations within the 20-year collection period provided by 18 U.S.C. § 3613(b). Given these circumstances, it is hardly surprising that the Government has stepped up its collection efforts of late in an effort to ensure that the victim of Woods' crimes is made whole and to enforce the judgment entered in this case.

On September 3, 2010, the Government (which is responsible for enforcing and collecting the restitution order pursuant to 18 U.S.C. §§ 3612(c) and 3613(a)) filed an Application for Writ of Garnishment (doc. 246) seeking to garnish Woods' wages through his employer, Robert J. Baggett, Inc. (the "Garnishee"). The Application made clear that the amount of Woods' wages subject to garnishment could not exceed the lesser of (a) 25% of his disposable earnings for the week, or (b) the amount by which his disposable earnings for the week exceed 30 times the federal minimum hourly wage. *See* 15 U.S.C. § 1673(a) (setting forth limitations on maximum allowable garnishment under federal law); 28 U.S.C. § 3205(a) (writ of garnishment may reach "nonexempt disposable earnings"); 28 U.S.C. § 3002(9) (defining "nonexempt disposable earnings" as "25 percent of disposable earnings"). The Clerk of Court issued a Writ of Garnishment to the Garnishee on September 13, 2010. (Doc. 247.) On October 19, 2010, the Garnishee filed an Answer (doc. 250) acknowledging that it employs Woods and stating that it will garnish Woods' wages as required by the writ.

For his part, Woods, who is proceeding *pro se*, filed a Request for Hearing or Transfer (doc. 251) on October 28, 2010. Woods checked the block for "Hearing Requested – Not indebted to the Government"; however, he does not allege that he is not in fact liable (jointly and severally with his co-defendants) for the approximately $74,000 in outstanding restitution ordered by the March 1998 criminal judgment. Rather, Woods' objections are more procedural and equitable in nature. In particular, he asserts that he has conscientiously paid his restitution obligations every month, that the Government abruptly raised his monthly payment by a factor of five, that he simply cannot afford this new monthly payment and meet his other financial obligations (such as rent), and that he did not receive notice of the garnishment process until a week after garnishment of his wages had already begun.[2]

---

[2] Woods also attaches a "Claim for Exemption Form" wherein he checks boxes for seven different categories of exemptions he is claiming, to-wit: wearing apparel and school books; fuel, provisions, furniture and personal effects; books and tools of a trade; unemployment benefits; undelivered mail; workmen's compensation; and service-connected disability payments. Woods' claim of these exemptions proceeds from an obvious misunderstanding. The Government is not attempting to garnish or seize any of these categories of property, but is only garnishing his nonexempt disposable earnings; therefore, the claimed exemptions available for other types of personal property that are not being garnished in this case are plainly irrelevant.

Based on Woods' filings, there is simply no reason to believe that he is not in fact indebted to the Government. He has not denied the validity of the restitution order or the veracity of the Government's balance calculations. Nor has Woods come forward with any colorable claim of exemption from garnishment. By all appearances, the writ of garnishment was properly issued upon request by the Government pursuant to its statutory responsibility to collect on an outstanding, valid criminal restitution order pending against Woods and his co-defendants. There is no indication on these facts that the Government's use of a writ of garnishment was unjustified or that the proper statutory requirements for issuance of same were not met. But that is not the end of the matter. Relevant federal statutes require this Court to hold a hearing upon timely request by the judgment debtor, which has been made here. *See* 28 U.S.C. § 3205(c)(5) (if judgment debtor files written objection and request for hearing within 20 days after garnishee's answer, "[t]he court shall hold a hearing within 10 days after the request is received by the court, or as soon thereafter as is practicable"); 28 U.S.C. § 3202(d) (when judgment debtor requests hearing on Government's exercise of postjudgment enforcement remedy, court "shall hold a hearing on such motion as soon as practicable" to determine whether the order granting such remedy should be quashed); *United States v. Pugh*, 2003 WL 22048360, *1 (8th Cir. Sept. 3, 2003) (concluding that where debtor objects to garnishment, "the district court must conduct a hearing as soon as practicable," such that it is reversible error for district court to deny hearing mandated by FDCPA). Woods has requested a hearing, so he is entitled to one by the plain language of § 3205(c)(5).

This hearing will not be an empty formality either. After all, while the Government is responsible for collecting the restitution ordered against Woods, this Court is vested with statutory oversight of the manner and method of collection, and may curtail the enforcement tools selected by the Government upon proper consideration of the surrounding facts and circumstances. *See* 28 U.S.C. § 3013 ("The court may at any time on its own initiative or the motion of any interested person … make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter."); *United States v. Lawrence*, 538 F. Supp.2d 1188, 1195 (D.S.D. 2008) ("§ 3013 provides a defendant with a layer of protection against abuse or potential abuse by the Government" in garnishment context). Federal courts have routinely found that § 3013 and § 3205, read in tandem, confer authority for district courts to modify or reduce garnishment orders based on a judgment debtor's

individual circumstances.³ Insofar, then, as Woods' objection is that the garnishment of 25% of his disposable earnings is inequitable or excessive based on his individual circumstances, he is entitled to present that argument for the Court's consideration via timely hearing.

In light of the foregoing, this matter is hereby set for hearing in **Courtroom 2A** on **November 23**, **2010** at **9:30 a.m.** The Government and Woods are **ordered** to appear and to be prepared to present evidence and argument as to whether, based on Woods' individual circumstances, the writ of garnishment issued to his employer should be modified in some way pursuant to the undersigned's statutory authority to regulate the Government's collection activities. At the hearing, Woods should bring and be prepared to present financial records documenting his regular monthly expenses and demonstrating how the garnishment of 25% of his disposable earnings would be inequitable or impose undue hardship. For its part, the Government should bring evidence showing Woods' payment history on the restitution amount, and that of his co-defendants as well, including any delinquencies, and setting forth the prospects for collection of the remaining substantial restitution figure going forward.

All of that said, it appears from reviewing the court file that the instant dispute stems in substantial part from a lack of communication between Woods and the Government's counsel on this matter.⁴ It is not clear why the parties cannot resolve this issue themselves without judicial

---

³ *See, e.g., United States v. Ogburn*, 499 F. Supp.2d 28, 29-31 (D.D.C. 2007) (collecting authorities and concluding that district courts have authority to stop, suspend, or otherwise modify garnishment of a defendant's wages under the Federal Debt Collection Procedures Act, and that they may take into account a defendant's individual circumstances in exercising that authority); *United States v. Crowther*, 473 F. Supp.2d 729, 731 (N.D. Tex. 2007) (under § 3205(c)(5), "the Court has the discretion to consider an objection that a garnishment of 25% of disposable earnings is inequitable under the judgment debtor's individual circumstances"); *United States v. George*, 144 F. Supp.2d 161, 164 (E.D.N.Y. 2001) ("a 25% garnishment of disposable income (as opposed to any lesser amount) is not mandatory, and the court may properly consider the circumstances of this individual garnishee," as nothing in statutory language "mandates a garnishment of a particular amount").

⁴ For example, Woods maintains that this restitution payments quintupled "out of the blue," apparently without notice or discussion, despite his history of timely payment and his inability to afford the new arbitrary figure. Woods further indicates that the garnishment writ came as a complete surprise to him, in that he did not receive notice until it was a *fait accompli*. If these statements are accurate, they are symptomatic of a dearth of constructive dialogue between Woods and the Government concerning the restitution collection process.

involvement by fixing a mutually satisfactory monthly installment amount that would accommodate both the Government's overriding interest in obtaining compensation for the victim of Woods' crimes and Woods' countervailing interest in being able to meet his monthly financial obligations without the restitution order relegating him to insolvency. Accordingly, Woods and the Government's counsel are **ordered** to meet and confer in good faith at a mutually convenient time in advance of the hearing to explore whether this issue may be amicably resolved without judicial intervention, and to file a joint written report of those discussions at least 24 hours prior to the hearing.

    The Clerk's Office is **directed** to mail a copy of this Order to Woods at the address specified in his Request for Hearing.

    DONE and ORDERED this 29th day of October, 2010.

                                          s/ WILLIAM H. STEELE
                                          CHIEF UNITED STATES DISTRICT JUDGE